UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOYCE E. MYERS,                                Case No. 1:14-cv-636

         Plaintiff,                           Barrett, J.
                                                            Bowman, M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Joyce E. Myers filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents several claims of error for this Court's review. The Commissioner filed a response, to which Plaintiff filed no reply. As explained below, the ALJ's finding will be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Background**

On March 22, 2011, Plaintiff filed an application for supplemental security income ("SSI"),[1] alleging a disability onset of December 2, 2010 due to a combination of physical and mental impairments. Her application was denied initially and upon reconsideration, following which Plaintiff sought an evidentiary hearing. A videoconference hearing was held on November 19, 2012, at which the Administrative Law Judge ("ALJ") John S. Pope presided from Chicago, while Plaintiff appeared in

---

[1] Plaintiff also applied for disability insurance benefits ("DIB") but because her alleged onset date was after her date last insured, she did not qualify for those benefits. She appeals only the SSI determination in this proceeding.

Dayton, Ohio with counsel and presented testimony. A vocational expert also presented testimony. (Tr. 68-105). On December 21, 2012, the ALJ filed a written decision in which he determined that Plaintiff was not disabled. (Tr. 48-62).

Plaintiff was 55 years old at the time of the hearing, with a high school education. (Tr. 74). Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date,[2] but has past relevant work as a sales attendant, cleaner, cook, server, and day care worker.

The ALJ determined that Plaintiff has the following severe impairments: "systemic lupus erythematosus versus mixed connective tissue disease, mild peripheral neuropathy of both lower extremities, chondromalacia of the right knee, lumbar degenerative disc disease, erythematotelangiectatic rosacea, depressive disorder, borderline intellectual functioning, [and] obesity." (Tr. 50). None of the impairments, or combination thereof, met or equaled any Listed Impairment in 20 C.F.R. §404, Subpt. P, Appx. 1. (Tr. 57). The ALJ determined that despite her impairments, Plaintiff retains the residual functional capacity ("RFC") to perform light work, as further limited "to unskilled work without production rate pace requirements." (Tr. 57). After considering the record as a whole, the ALJ determined that Plaintiff could continue to perform past relevant work as a sales attendant or cleaner, and therefore was not disabled. (Tr. 62).

Plaintiff does not challenge the ALJ's determinations concerning her mental limitations. Instead, she argues error in the assessment of her physical limitations. More specifically, she contends that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, who opined that Plaintiff's limitations were so extreme that she would be unable to perform even sedentary work.

---

[2]The month following her alleged disability onset date, in April 2011, she earned $922 as a day care worker, but that amount is just under the threshold of $1,000 per month that would be considered substantial gainful activity.

2

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In other words, this Court must affirm even if the Court itself might have reached a different conclusion in reviewing the same evidence. As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

3

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. §404.1512(a).

**B. Specific Claims of Error**

**1. Evaluation of Medical Opinion Evidence**

The medical evidence of record included examination records and opinions from consulting physicians, records from various treating physicians, and a single opinion from Plaintiff's family physician, Dr. Jeffrey Jarrett. The ALJ first reviewed opinions in the record that pertained to Plaintiff's psychological limitations, ultimately giving "considerable weight" to the opinion of a non-examining consultant and "some weight" to the opinions of an examining consultant. Plaintiff does not challenge the ALJ's evaluation of the psychological opinion evidence.

Instead, Plaintiff's related claims of error focus on the ALJ's assessment of the

opinion evidence concerning her physical limitations.  By determining that Plaintiff retained an RFC that restricted her to work at the light exertional level, the ALJ clearly found Plaintiff to be physically impaired.  The record contains three very different opinions concerning the extent of Plaintiff's physical limitations:  (1) the opinions of two non-examining agency consultants that Plaintiff had no severe physical impairments at all; (2) the opinion of an examining consultant, Dr. Phillip Swedburg, that Plaintiff appeared capable of "a moderate amount of" nearly all activities including "lifting and carrying heavy objects," with "no difficulties" with reaching, grasping, or handling objects or other limitations; and (3) the opinion of treating physician, Dr. Jarrett, who opined that Plaintiff was so physically limited that she could not perform any work at all.

      The ALJ ultimately found that none of the referenced opinions were entitled to "much weight."   Instead, the ALJ determined Plaintiff's physical RFC based upon the entirety of all other evidence of record.  Plaintiff asserts that the ALJ erred because even though he specifically found that none of the referenced physician RFC opinions were entitled to "much weight," in another portion of the same opinion the ALJ stated that his findings was based in part upon his decision to give "considerable weight" to the opinions of treating and examining physicians.

      In context, it is possible to reconcile these two disparate portions of the ALJ's opinion without finding any error.  The language that refers to "considerable weight" being given to some medical opinions may have been intended to refer only to the opinions concerning Plaintiff's mental limitations, rather than the ALJ's more negative assessment of the opinions concerning her physical limitations.  The inclusion of the sentences leading up to the "considerable weight" language provides context:

> For her mental health, particularly depressive symptoms and estimated borderline intelligence, she requires limitations that address stress levels

> at work.  She is, therefore, limited to unskilled task completion that does not involve production rate pace requirements.  The treatment and examination notes of the treating sources and examining sources established the presence of these impairments, the combined effect of which has resulted in the residual functional capacity above.  The opinions of the claimant's treating and examining [consulting] medical professionals are consistent with this decision and the record as a whole.  Because these opinions reflect a longitudinal perspective of the claimant's impairments, were given by professionals who examined the claimant, and were supported by medical signs and findings, the undersigned accords them considerable weight.

(Tr. 58).

In other words, the last sentence is consistent with the weight given to the mental health opinions discussed just prior to the "considerable weight" conclusion.  To the extent that the ALJ did not intend to limit the language to the opinions of the mental health professionals, the undersigned finds any error to have been harmless and not grounds for remand.  The ALJ made abundantly clear in the remainder of his opinion why he was giving little weight to the medical opinion evidence concerning Plaintiff's physical residual functional capacity.

### a. Rejection of Consulting Opinions

At Step 2, the ALJ found a number of "severe" physical impairments, in contrast to the opinions of two non-examining state agency medical experts who initially determined that there was no evidence to show any severe physical impairment.  (Tr. 114-115; Tr. 126), The ALJ similarly rejected the opinion of the examining consultant who determined that Plaintiff could engage in "a moderate amount of sitting, standing, ambulating, bending, kneeling, pushing, pulling, and lifting and carrying heavy objects," with "no difficulties" with reaching, grasping, or handling objects or other limitations.

> At this time, the undersigned disagrees, noting the clinical and objective findings, as well as ongoing treatment for pain attributed to lupus, fibromyalgia, or mixed connective tissue disease.  Clinical finding of right knee chondromalcia and lumbar degenerative disc disease, likely

6

>complicated by obesity further show severe impairment. Significantly, even though the claimant has now lost weight, the expert did not then consider the effect of the claimant's obesity, as required by SSR 02-1p. The expert gave some consideration to the opinion from Dr. Swedburg, noting that it is vague regarding her limitations, but appears to have based the determination on his mostly normal physical examination. The undersigned has afforded neither opinion much weight.

(Tr. 61).

Understandably, Plaintiff does not protest the ALJ's rejection of the consulting opinions too strenuously. Had the opinion of the non-examining consultants been adopted that Plaintiff had no severe impairments, the ALJ could have found that Plaintiff had no significant physical work limitations at all. Similarly, if he had fully accepted the examining consultant's opinion that she could perform a "moderate amount" of activities, the ALJ could have found that Plaintiff could perform the full range of medium level work rather than the more limited range of light exertional work that he determined. *See, e.g., Bailey v. Astrue*, 2009 WL 2914106 at *4 (E.D. Ky. 2009)(affirming ALJ determination that plaintiff could perform the full range of medium work, finding that RFC to be "essentially consistent with…somewhat vague limitations" by the consultant that plaintiff could perform a "moderate" amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects); *Hambrick v. Com'r of Soc. Sec.*, Case No. 1:13-cv-374-MRB-SKB, 2014 WL 1961945 (S.D. Ohio, May 15, 2014)(R&R noting that "case law from this district suggests that 'mild to moderate' postural abilities can support work at up to the medium exertional level"), adopted at 2014 WL 2589317 (S.D. Ohio, June 10, 2014).

In short, the undersigned finds no error in the ALJ's analysis of the consulting physicians' opinions, which was favorable to Plaintiff.

7

### b. Standards Applicable to Treating Physician Opinion

Plaintiff's main purpose in raising the issue of the consulting physician opinions seems to rest on a false premise that because the ALJ rejected the two consulting opinions in whole or in part, the ALJ was required to adopt in their entirety the remaining RFC opinions of her treating physician.

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). In accord with the regulatory language, controlling weight may not be given to a treating source's medical opinion that is not "well supported by medically acceptable clinical and laboratory diagnostic techniques" or one that is "inconsistent with the other substantial evidence in the record." *Id.*

The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009). If the ALJ chooses not to give controlling weight to a treating

physician's opinion, he must provide "good reasons" for the weight that he provides to the opinion in order to enable a meaningful review of the decision. 20 C.F.R. §404.1527(c)(2).

However, not all "opinions" are due the same deference, even if given by a treating physician. With particular application to the instant case, 20 C.F.R. §404.1527(d) explains that medical source "opinions" on issues reserved to the Commissioner are "**not** medical opinions…but are, instead, opinions on issues reserved to the Commissioner…." *Id.*, (emphasis added).  As examples of legal opinions "reserved to the Commissioner" as opposed to medical opinions to which deference is due, the regulation lists:

> (1) Opinions that you are disabled….
>
> (2) ….Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any…Listing of Impairments…, **your residual functional capacity** (see §§404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these factors is reserved to the Commissioner.
>
> (3) We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section.

*Id.* (emphasis added).  In other words, there is no requirement that an ALJ rely on any particular opinion evidence when determining an individual's RFC, so long as the decision is supported by substantial evidence in the record as a whole.  In fact, experience teaches that in some cases, there are no medical source opinions at all that provide detailed opinions on an individual's RFC.  So long as there is substantial medical and other evidence in the record as a whole to support the RFC determination, the decision will be upheld.

Of course, when an ALJ has rejected most or all of the medical source "opinions"

9

as in this case, even if some of those opinions arguably transgress the authority of the Commissioner to make RFC findings, a court will quite naturally examine the record closely to determine whether substantial evidence exists to uphold the RFC findings and, ultimately, the non-disability determination. Having closely examined the record in this case, the undersigned finds the existence of such substantial evidence to affirm the ALJ's decision.

Dr. Jarrett is Plaintiff's family doctor; Plaintiff testified that she has treated with him every two to three months for approximately 10 years. (Tr. 51). A letter dated March 8, 2011 from Dr. Jarrett varies somewhat to the extent that he states he has treated Plaintiff for "several years." Notably, treatment notes submitted from his office date back only to December 2010. (Tr. 52).

The "opinions" that Plaintiff argues should have been adopted are nearly all RFC opinions that are reserved to the Commissioner. In November 2012, Dr. Jarret completed a "Physical Residual Functional Capacity Questionnaire" form at the request of counsel, and opined that Plaintiff could perform significantly less than a full range of sedentary work based upon diagnoses of systemic lupus erythematosus, hypertension, chronic low back pain, chronic right knee pain, severe acne rosacea, and depression, with a poor prognosis. (Tr. 395). He opined that Plaintiff could walk no more than one-fourth a city block at one time, could sit for only 10 minutes and stand for 15 minutes at a time, and could sit or stand/walk for less than two hours each during an eight-hour day. (Tr. 396). He opined that she would need a five-minute period of walking around every 15 minutes, require the ability to shift positions at will from standing, walking, or sitting, and should take unscheduled 15-minute breaks every 15-20 minutes. (Tr. 397). He believed she could lift no more than 10 pounds occasionally, with significant

limitations in repetitive reaching, handling or fingering, to the extent she could handle and finger objects no more than 25 percent of the day and reach not at all, both bilaterally. (Tr. 397-398). He stated her pain and other symptoms would interfere "constantly" with her attention and concentration, though he assessed only slight limitation with her ability to deal with work stress. He found she would be absent "more than three times per month," which was the highest level offered by the form. (Tr. 398).

Dr. Jarrett indicated that he had seen Plaintiff for office visits "as needed, every three to six months." (Tr. 395). However, his most recent treatment notes reflect visits approximately seven months apart – on September 2011, and again on April 10, 2012. (Tr. 55, 53). The ALJ analyzed his opinions as follows:

> As an initial matter, a standard form medical questionnaire assessing the cliamant's residual functional capacity is entitled to little weight where the opinion is without explanation in the form of a narrative. In this case, Dr. Jarrett listed multiple objective signs and findings at the beginning of the form, when prompted, but did not explain why they would force the extremely limited restrictions he noted in the form. Furthermore, the claimant testified that none of her physicians has given her any specific activity restrictions, which makes these severe limitations somewhat less credible. For example, according to Dr. Jarrett, the claimant requires five minutes of walking every 15 minutes, unscheduled 15-minute breaks every 15 minutes, and more than three absences per month, and she cannot stand/walk or sit for more than four hours in a day. The treatment notes do not support such extreme restrictions, nor do the claimant's reported activities of daily living. For these reasons, the undersigned cannot afford the form opinion much weight.

(Tr. 61).

Plaintiff argues that the above analysis does not constitute "good" or "sufficiently specific" reasons to reject Dr. Jarrett's opinions. I disagree. The ALJ acknowledged Dr. Jarrett's status as a treating physician, despite discrepancies in the records as to how frequently, and for how many years, he had treated Plaintiff. The ALJ determined that Dr. Jarrett's opinions were not entitled to controlling weight because they were neither

11

well-supported by medically acceptable clinical and laboratory diagnostic techniques in Dr. Jarrett's own records, or by other records, and his extreme opinions concerning Plaintiff's limitations were neither supported by nor remotely consistent with other substantial evidence in the record.

The ALJ explained that Dr. Jarrett's treatment notes reflected visits in August 2011 that focused on the worsening of her facial rash, and a follow-up in September 2011 in which her condition was reported as "improved." (Tr. 53). Plaintiff herself testified that neither Dr. Jarrett nor any other treating physician has ever given Plaintiff any specific activity restrictions. (Tr. 51). In September 2011, Dr. Jarrett assessed chronic lower and upper back pain and right knee pain but did not initiate any treatment plan. (Tr. 53).

Before Plaintiff's next visit with Dr. Jarrett nearly seven months later, she saw Malini Juyal, who Plaintiff testified diagnosed her with fibromyalgia. Although a March 9, 2012 record lists a diagnosis of fibromyalgia and reflects a prescription for a 10-day course of prednisone, no examination records (other than height, weight, and blood pressure) were included in the medical evidence of record submitted to the ALJ. (Tr. 387-389). Nevertheless, Plaintiff reported at her April 2012 visit with Dr. Jarrett that Dr. Juyal had diagnosed her with fibromyalgia and not lupus. As a result, Dr. Jarrett revised his own impression to a mixed connective tissue disorder. (Tr. 55). Dr. Jarrett noted that her right knee was the "main complaint" but that her "range of motion was fairly full." (Tr. 356). At the April 2012 visit Dr. Jarrett made no mention of any back pain or abnormalities pertaining to Plaintiff's spine. To address he knee, he started Plaintiff on an anti-inflammatory (Mobic) and referred her to orthopedist Scott Albright, M.D.

Dr. Albright diagnosed her with chondromalacia of the right knee and prescribed

12

physical therapy.  He found she had full range of motion, no swelling, normal strength and normal reflexes (Tr. 374-376).  Straight leg raising tests were also negative, muscle tone was normal, and there was no lumbosacral spine weakness or muscle spasm, with gait and stance also normal.  (Tr. 373-374).  PT was discontinued due to a lack of sufficient progress.  Dr. Albright also administered a corticosterouid injection and sent her for EMG testing.  That June 2012 testing showed some mild or early peripheral neuropathy of both extremities, with no evidence of any lumbar radiculopathy.  At a return visit in July 2012, Dr. Albright found only "mild tenderness" on exam, with a full range of motion and again a negative straight leg raising test.  (Tr. 386).  He started Plaintiff on Neurontin.  Plaintiff reported that she was "going out of town for quite some time," and therefore would not return to Dr. Albright "for several months."  (Tr. 55, citing Tr. 386).  There is an absence of any records from July through November 2012.

     Dr. Jarrett completed the physical RFC form on November 15, 2012 despite his last examination of Plaintiff having been April 10, 2012.  Plaintiff's visit before that also spanned seven months, dating to September 2011.  Despite treatment notes of April 2012 that reflected a revised diagnosis from lupis to a mixed connective tissue disorder, on the November 2012 RFC form Dr. Jarrett again listed diagnoses of systemic lupus erythematosus, hypertension, chronic low back pain, chronic right knee pain, severe acne rosacea, and depression.  (Tr. 55).

     Dr. Jarrett did report some clinical findings to support his opinions concerning Plaintiff's allegedly extreme limitations, including poor range of motion in the lower back, tenderness of the scapular and neck areas and lumbar spine, spasm in the lumbar and upper thoracic areas, and severe degenerative disc disease at L4-L5.  (Tr. 55).  However, his opinions were largely conclusory in nature and unsupported by any

13

objective evidence or even his own clinical records. He did not explain, for example, why Plaintiff would have handling and fingering limitations, since she has never complained of pain handling or fingering objects and has no diagnosis of carpal tunnel syndrome or similar impairment. Nor did he explain how Plaintiff's spinal tenderness or muscle spasm would translate into such specific and extreme postural limitations as to preclude all work. (*See* Tr. 61, "[h]e did not explain why they would force the extremely limited restrictions he noted in the form.").

Although Dr. Jarrett focused on Plaintiff's back complaints to support his extreme limitations, the last clinical record in which he noted any complaints from Plaintiff about back pain were from a September 2011 visit, fourteen months prior to the RFC form. Other intervening evidence (both the April 2012 visit which made no reference to back pain, and Drs. Swedburg's and Alberts' examination records) suggested that any range of motion issues or back spasms had improved if not fully resolved. Additionally, the day after Dr. Jarrett completed his RFC opinion form, Plaintiff underwent lab-work and presented for x-rays. Those objective tests also failed to support Dr. Jarrett's opinions. Her x-rays showed only minimal osteophytosis and moderately narrowed L4-L5 disc space, and were otherwise normal. Similarly, her lab work was largely unremarkable but for high low-density lipoprotein cholesterol and high thyroid stimulating hormone. (Tr. 56). Finally, the ALJ noted that Dr. Jarrett's recommended limitations were inconsistent with Plaintiff's daily activities. (Tr. 61).

Having found that the ALJ properly gave Dr. Jarrett's RFC opinions little weight, the undersigned briefly considers the substantial evidence in the record as a whole that supported the physical RFC determination made by the ALJ; namely, that Plaintiff is capable of light exertional work. Plaintiff's claim primarily rests upon her pain

complaints. Subjective complaints of pain may support a claim for disability. *See Duncan v. Sec'y of HHS*, 801 F.2d 847, 852 (6th Cir. 1986). However, in cases in which complaints of disabling pain are not well-supported by medical evidence, the credibility of the claimant is often critical. *See Tyra v. Sec'y of HHS*, 896 F.2d 1024, 1030 (6th Cir. 1990)(Though claimant's physicians consistently reported Tyra's subjective complaints of pain, he had no underlying neurological abnormalities, atrophy or proportionate loss of sensory and reflex reactions."); *Daniels v. Com'r of Soc. Sec.*, 2011 WL 2110145 at*4 (S.D. Ohio May 25, 2011)(normal neurological findings or other results of objective testing may be considered in determining credibility of subjective complaints, citing *Cross v. Com'r of Soc. Sec.*, 373 F. Supp.2d 724, 732 (N.D. Ohio 2005)). As other courts have noted, many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible…." (Tr. 58). He went on to explain multiple reasons for that adverse determination, citing her extensive daily activities, including doing dishes, laundry in the basement, yard work, sweeping, vacuuming, taking out the trash, travel, going out to eat, and attending twice weekly church services. The ALJ further noted that her treatment records reflected improvement with treatment, and that Plaintiff stopped working not because of any physical condition but for other reasons. (Tr. 59).

In addition to the adverse credibility finding concerning the severity of Plaintiff's pain complaints and alleged limitations, which finding Plaintiff does not challenge here,

15

the ALJ gave "some consideration" to Dr. Swedburg's examination assessment, which was mostly normal. (Tr. 61, 346-355). An x-ray of the right knee showed only slight spurring. (Tr. 350). In fact, nearly all objective findings suggested that Plaintiff would have very few physical limitations. Based on the objective evidence and limited clinical records to support any restrictions, Dr. Swedburg found Plaintiff capable of "a moderate amount of sitting, standing, ambulating, bending, kneeling, pushing, pulling, and lifting and carrying heavy objects," (Tr. 348). As previously stated, Dr. Swedburg's somewhat vague opinions would have been consistent with a finding of medium level work. Giving Plaintiff the benefit of the doubt, despite expressly finding Plaintiff not to be fully credible for a variety of reasons, the ALJ exercised his discretion to restrict Plaintiff to the light exertional level. The ALJ's RFC findings and the ultimate non-disability determination are supported by substantial evidence in the record as a whole.

### III. Conclusion and Recommendation

For the reasons discussed above, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** and that this case be **CLOSED**.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOYCE E. MYERS,                                       Case No. 1:14-cv-636

        Plaintiff,                                Barrett, J.
                                                    Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).